UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

BEN EDTL,

      Plaintiff,

v.

BEST BUY STORES, L.P., CHRIS DAVIS, AND JANE DOE,

      Defendants.

Case No. 3:22-cv-00003-AR

**OPINION AND ORDER**

---

**ARMISTEAD, Magistrate Judge**

  Plaintiff Ben Edtl brings this 42 U.S.C. § 1983 action against defendants Best Buy Stores, L.P., Chris Davis, and Jane Doe. In December 2021, the Best Buy Tualatin store had a sign posted at its entrance stating that, as a safety measure to address the COVID-19 pandemic, face coverings were required inside the store. Edtl went maskless into the store, and, after defendants informed Edtl that he needed to wear a mask, they called the police when he refused to do so.

Page 1 – OPINION AND ORDER

Based on that interaction, Edtl brings two claims against defendants. In Claim 1, Edtl alleges that wearing a mask is a medical treatment and that Best Buy's enforcement of OAR 333-019-1025, an Oregon rule mandating face coverings indoors,[1] was a coercive attempt to have him wear a mask, which violated his substantive due process rights.[2] Am. Compl. ¶¶ 38-40. In Claim 2, Edtl invokes the Supremacy Clause of the Constitution to allege that defendants' conduct violated his "right to informed consent" under the Emergency Use Authorization (EUA) statute, 21 U.S.C. § 360bbb-3, which sets out the statutory framework for the Food and Drug Administration's emergency authorization of drugs, devices, and biological products. Am. Compl. ¶¶ 41-46, ECF No. 10.[3] For both claims, Edtl alleges that defendants are state actors on

---

[1]    OAR 333-019-1025(1) provides:

> COVID-19 infection is transmitted predominately by inhalation of respiratory droplets generated when people cough, sneeze, sing, talk, or breathe. Studies show that masks and face coverings block the release of respiratory droplets into the environment and can also reduce the wearer's exposure to droplets. COVID-19 viral particles spread between people more readily indoors, particularly when people are closer together for longer periods of time indoors. This rule is necessary to help control COVID-19, reduce hospitalizations and deaths, and provide general health protection to people in Oregon.

OAR 333-019-1025(5) provides that "[i]ndividuals, regardless of vaccination status, are required to wear a mask, face covering or face shield except as exempted in section (6) of this rule when in an indoor space." OAR 333-019-1025(7)(b) provides that a "person responsible for an indoor space must . . . [m]ake reasonable efforts to ensure customers, guests, visitors and other individuals comply with this rule within the indoor space."

[2]    "The Due Process Clause guarantees more than fair process, and the 'liberty' it protects includes more than the absence of physical restraint." *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997).

[3]    In the alternative, defendants move to strike portions of the amended complaint under Rule 12(f) or to make the complaint more definite under Rule 12(e). *See* Mot. to Dismiss at 20-21. Because the court grants defendants' motion to dismiss, it does not address these arguments.

the basis that Oregon's administrative rules requiring face coverings in indoor spaces coerced defendants into coercing Best Buy's customers to wear a mask.

Defendants move to dismiss both of Edtl's claims under Federal Rule of Civil Procedure (Rule) 12(b)(6). Mot. to Dismiss, ECF No. 11. For the following reasons, the court GRANTS defendants' motion.[4]

## BACKGROUND

For the purposes of this motion to dismiss, the court assumes Edtl's factual allegations are true. *See Weston Family P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 617 (9th Cir. 2022) ("When assessing the adequacy of a complaint, we accept all factual allegations as true and view them in the light most favorable to the plaintiff.").

On December 17, 2021, Edtl and his wife went shopping at a Best Buy retail store in Tualatin, Oregon. Am. Compl. ¶ 10. At that time, OAR 333-019-1025—which required masks or face coverings in indoor spaces—was in effect.[5] The Tualatin store had a sign posted on its door, stating that "face coverings are required inside our store." *Id.* ¶ 11. To "serve [customer] needs while keeping health in mind," the sign also indicated that the store offered free home delivery, free contactless curbside pickup, and virtual consultations. *Id.*

---

[4] The parties have consented to magistrate judge jurisdiction under 28 U.S.C. § 636(c)(1). *See* ECF No. 8.

[5] OAR 333-019-1025 was in effect until the State Public Health Director or Officer declared that the mask mandate was no longer necessary to control COVID-19. OAR 333-019-1025(2); Public Notice, Oregon Health Authority Public Health Div. (March 11, 2022). Edtl asks for, in addition to damages, injunctive relief against Best Buy's enforcement of Oregon's mask mandate. The order rescinding the indoor face covering requirement renders moot Edtl's requested injunctive relief.

Page 3 – OPINION AND ORDER

Soon after Edtl entered the store without a face covering, Jane Doe—a store employee working at the reception desk—told Edtl that he needed to comply with the store's mask policy or "leave the store right now." *Id.* ¶¶ 12, 13. When Edtl refused and proceeded into the store, Jane Doe "aggressively" told Edtl to leave the store immediately. *Id.* ¶ 14. Jane Doe warned Edtl that she would call the police if he did not leave. Edtl neither left the store nor put on a face covering, and one of defendants called the police. When the police arrived, Edtl was informed that "Best Buy sought to assert a trespass claim against him." *Id.* ¶ 16. At Edtl's request, the police escorted him to speak with the store manager, Chris Davis. ¶ 17. After Edtl asked Davis about his familiarity with Oregon's mask regulation and expressed that the efforts to coerce him to wear a mask violated his civil rights, the police escorted Edtl from the store. *Id.* ¶¶ 17-18.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must include allegations sufficiently detailed "to raise a right to relief above a speculative level" and render each pleaded claim "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

The complaint "may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to

defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In evaluating the sufficiency of a complaint, the court accepts as true all well-pleaded factual allegations and construes them in the light most favorable to the nonmoving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). The court need not, however, credit a plaintiff's legal conclusions that are couched as factual allegations. *Iqbal*, 556 U.S. at 678-79.

## DISCUSSION

Both of Edtl's claims are brought under 42 U.S.C. § 1983. That statute creates a private right of action for a plaintiff alleging that a state actor violated a person's "rights, privileges, or immunities secured by the Constitution." To state a claim under § 1983, a plaintiff must allege that: (1) the conduct complained of deprived him of an existing "right secured by the Constitution or laws of the United States" and (2) the alleged violation was committed by a state actor or person acting under the "color of state law." *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). The court turns first to Edtl's substantive due process claim and then to his EUA claim.

A.  *Claim 1: Substantive Due Process*

Edtl's substantive due process claim alleges that he has a "constitutionally protected liberty interest to refuse medical treatment under the Due Process Clause of the Fourteenth Amendment," and that, defendants, acting under color of law, violated that right by enforcing OAR 333-019-1025. Am. Compl. ¶¶ 34-40. Edtl also alleges that defendants are deemed state actors because they were "willfully participating" in the enforcement of OAR 333-019-1025 and that Oregon coerced defendants to coerce Best Buy's customers to wear masks. *Id*. ¶¶ 28-29.

"Substantive due process protects individuals from arbitrary deprivation of their liberty by government." *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir.2006). Heightened protection under substantive due process applies to "those fundamental rights which are deeply rooted in this Nation's history and tradition." *Washington v. Glucksberg*, 521 U.S. 702, 719-20 (1997). When the government infringes a fundamental right, a court applies a strict scrutiny analysis to determine whether the law passes constitutional muster. *Id*. at 721. When the government infringes a nonfundamental right, however, the court applies a rational basis analysis. *Id*. at 722. Rational basis analysis presumes legislation "to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985).

Defendants advance three arguments concerning Edtl's substantive due process claim. *First*, defendants assert that Edtl was never coerced into wearing a face mask, for the simple fact that Edtl never put on a face mask. Defendants also point out the choices that were available to Edtl: shopping maskless outside with an associate via iPad or shopping online. Mot. to Dismiss at 4. *Second*, defendants argue that § 1983 is generally not applicable to private parties and that they are not state actors because "merely attempting to comply with applicable rules does not, as a matter of law, rise to the level of state action or acting under color of state law." *Id.* at 5. *Third*, defendants assert that no fundamental right is implicated in this case, and that, therefore, (assuming they are state actors), rational basis review applies to Edtl's claim. *Id.* at 17.

Edtl responds that the fundamental due process rights he asserts arise from a right to refuse medical treatment recognized in Supreme Court case law. Resp. in Opp'n at 14, ECF No. 12; *see Glucksberg*, 521 U.S. at 720 (not recognizing the right to physician-assisted suicide but

Page 6 – OPINION AND ORDER

acknowledging that the substantive due process "provides heightened protection against government interference with certain fundamental rights and liberty interests"); *Cruzan v. Director, Missouri Dept. of Health*, 497 U.S. 261 (1990) (recognizing that a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment); *Washington v. Harper*, 494 U.S. 210, 221-22 (1990) (recognizing "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment"). In Edtl's view, Best Buy's mask policy did not give him the choice of refusing "medical treatment" that he did not want, and, because Oregon does not have a compelling interest in coercing him to wear a mask in Oregon's Best Buy stores, his constitutional rights were violated. Further, Edtl relies on Ninth Circuit cases to argue that defendants are state actors under the "state compulsion," "public function," "joint actor," and "nexus" factors. *See Sutton v. Providence St. Joseph Medical Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999) (pointing out factors that can be used to determine whether "something more" is present to determine that a private entity is a state actor).

      The court begins by pointing out a flaw in Edtl's argument: even assuming that the mask requirement is a "medical treatment" for purposes of substantive due process consideration, Edtl was able to refuse wearing a mask or face covering by not physically shopping inside the Best Buy store. Edtl never alleges any constitutional reason or life necessity for personally shopping inside the Best Buy store. His right to refuse wearing a mask is intrinsically tied to his choice to shop—or not to shop—inside the store. Edtl had other shopping choices available that day. He could have purchased the item or items he wished to purchase online and had Best Buy ship them to his residence or elsewhere, or picked them up outside a Best Buy store. He could have

Page 7 – OPINION AND ORDER

worked with a Best Buy employee outside the store to purchase items, and the purchased items would have been brought to him. Edtl's argument—that he was denied the right to refuse to wear a mask—requires the concomitant assertion that he had a constitutional right to shop inside a consumer electronics and appliance store. There is no such right, and consequently, Edtl had every liberty not to comply with Best Buy's mask requirement by not shopping inside the store.

The court is also unpersuaded that refusal of the requirement of wearing a face covering while shopping indoors—a public health requirement meant to prevent the spread of COVID-19—amounts to a fundamental right under the Due Process Clause. The refusal of medical treatments implicated in the cases on which Edtl relies concern profound medical decisions. In *Cruzan*, the Supreme Court considered whether the parents of a daughter who was in a persistent vegetative state had the right to withdraw her artificial feeding and hydration, which would result in her death. 497 U.S. at 266. In *Glucksberg*, the Court considered whether the right to physician-assisted suicide was a fundamental right under the Due Process Clause. 521 U.S. at 723. In *Harper*, the Court grappled with the "forcible injection of [antipsychotic] medication into a nonconsenting person's body," which "represents a substantial interference with that person's liberty." 494 U.S. at 229.

Wearing a face covering indoors while shopping does not match the gravity of self-determining decisions about life and death, or medication that significantly changes a person's mental processes. The court does not construe the fundamental right to refuse medical treatment so broadly as to include wearing a face covering. See *Glucksberg*, 521 U.S. at 727 (fundamental rights are those "*deeply rooted* on our [nation's] history and traditions" or "fundamental to our concept of constitutionally ordered liberty" (emphasis added)). Consequently, the court need not

consider whether Best Buy's actions are "narrowly tailored to serve a compelling state interest." *United States v. Juv. Male*, 670 F.3d 999, 1012 (9th Cir. 2012) (explaining strict scrutiny review for a violation of a fundamental right under a substantive due process analysis).

The court also notes that the Supreme Court has rejected a fundamental right to refuse vaccination in the midst of a public health emergency, *Jacobson v. Massachusetts*, 197 U.S. 11 (1905); vaccination is arguably a more invasive health measure than requiring masks indoors during a pandemic. In *Jacobson*, the Court observed that the "liberty secured by the Constitution . . . does not import an absolute right in each person to be, at all times and in all circumstances, wholly freed from restraint." *Id*. at 26. Further, communities have "the right to protect [themselves] against an epidemic of disease which threatens the safety of [their] members." *Id*. at 27. The court is mindful that the responsibility of assessing the most effective approaches to protecting public health lies with other branches of the government. *See id*. at 30.

Edtl never contends that defendants' actions or Oregon's mask mandate were not rationally related to a legitimate state interest. Nevertheless, it is readily apparent that his substantive due process claim would fail that level of review. Courts in the Ninth Circuit have repeatedly upheld similar mask mandates under rational basis review. *See, e.g.*, *Gunter v. N. Wasco Cty. Sch. Dist. Bd. of Educ.*, 577 F. Supp. 3d 1141, 1160 (D. Or. Dec. 22, 2021) (upholding mask mandate in schools as "rationally related to the legitimate state interests of reducing the spread of COVID-19 and protecting the more vulnerable persons within the population"); *Denis v. Ige*, 538 F. Supp. 3d 1063, 1080 (D. Haw. 2021) (mask mandate rationally related to a legitimate government purpose).

Even if there were a substantive due process violation, Edtl's § 1983 claim falls short because defendants are not state actors. The crux of Edtl's state-actor allegations is that Best Buy is civilly liable under a government-compulsion theory because the government compelled Best Buy to enforce its mask requirement, and Best Buy in turn compelled Edtl to wear a mask. Further, Edtl contends that involving the police when Edtl refused to leave establishes "joint activity" between defendants and the state. As the court will explain, defendants were merely complying with OAR 333-019-1025, a public health law generally applicable to all businesses in Oregon, and were therefore not state actors.

*Sutton* is instructive. In *Sutton*, the private-hospital defendant did not hire the plaintiff after he refused to provide his social security number. 192 F.3d at 830-31. The plaintiff refused on the basis that providing a social security number was against his religious beliefs. Immigration and tax laws required the defendant to obtain the social security numbers of its employees, and the plaintiff argued that, because the federal government compels an employer to obtain employees' social security numbers, it was civilly liable under the Religious Freedom Restoration Act to those who objected on religious grounds. *Id*.

The Ninth Circuit disagreed. It emphasized that "merely private conduct" is excluded from § 1983's reach and explained that a state-action analysis for the purpose of establishing § 1983 liability starts "with the presumption that private conduct does not constitute governmental action." *Id.* at 835. The court noted that, "'[w]ithout a limit such as this, private parties could face . . . litigation whenever they seek to rely on some . . . rule governing their interactions with the community surrounding them." *Id*. (quoting *Lugar v. Edmondson Oil, Inc.*,

457 U.S. 922, 937 (1982)). Thus, in "order for private conduct to constitute governmental action, 'something more' must be present." *Id*. The *Sutton* court reasoned that to

> accept Plaintiff's argument would be to convert every employer—whether it has one employee or 1,000 employees—into a governmental actor every time it complies with a presumptively valid, generally applicable law, such as an environmental standard or a tax-withholding scheme. Private employers would then be forced to defend those laws and pay any consequent damages, even though they bear no real responsibility for the violation of rights arising from the enactment of the laws.

*Id*. at 838-39. Because the plaintiff failed to allege a nexus between the government action and the private conduct—typically willful participation in a joint activity—the court concluded that it would not be fair to attribute liability to the private-entity defendant as a governmental actor. *Id*. at 843.

Likewise, with the generally applicable law challenged here, Edtl has not alleged the kind of willful cooperation with the State of Oregon and its mask requirement that would constitute the "something more" required to find that defendants were state actors. *See id*. at 841 (noting that typically the nexus has consisted of participation by the state in an action ostensibly taken by the private entity, through conspiratorial agreement, official cooperation with the private entity to achieve the private entity's goal, or enforcement and ratification of the private entity's chosen action). Here, Edtl alleges that Best Buy did *not* require masking in stores located in states without a statewide mask requirement, Am. Compl. ¶ 25, casting doubt on the proposition that Best Buy was a willing participant in Oregon's indoor face covering requirement. The court disagrees with Edtl's assertion that calling the police when a customer becomes recalcitrant and refuses to leave a store when asked to do so is the "something more" that the Ninth Circuit requires of private conduct. Because Edtl has not alleged facts that indicate that Best Buy, for

Page 11 – OPINION AND ORDER

example, conspired to create the indoor mask rule or independently sought to create such a policy, defendants cannot be found to be state actors for the purpose of establishing its civil liability under § 1983.[6]

In sum, because Edtl has not plausibly stated a violation of a constitutional right and that defendants are state actors, Claim 1 fails and it is dismissed.

**B.     *Claim 2: 21 U.S.C. § 360bbb-3***

Edtl argues that defendants violated his right to informed consent under the EUA, 21 U.S.C. § 360bbb-3. That statute has a provision that requires informed and voluntary consent for EUA medical devices.[7] Conversely, OAR 333-019-1025 does not require informed consent for

---

[6] Both Edtl and Best Buy have set out separate arguments for four factors the Ninth Circuit has identified to determine whether a private entity is a state actor. *See Sutton*, 192 F.3d at 835-36 ("(1) public function, (2) joint action, (3) governmental compulsion or coercion, and (4) governmental nexus."); *Howerton v. Gabica*, 708 F.2d 380, 383 (9th Cir. 1983) ("While these factors are helpful in determining the significance of state involvement, there is no specific formula for defining state action."). The court has considered Edtl's arguments about each factor, and, to the extent that they offer anything distinct from applying the *Sutton* court's analysis for a generally applicable law, the court rejects them. The court also rejects Edtl's argument that *Sutton* is distinguishable because OAR 333-019-1025(9) imposes a $500 fine for failing to enforce the mask requirement.

[7] 21 U.S.C. § 360bbb-3(e)(1)(A) provides:

> With respect to the emergency use of an unapproved product, the Secretary, to the extent practicable given the applicable circumstances described in subsection (b)(1), shall, for a person who carries out any activity for which the authorization is issued, establish such conditions on an authorization under this section as the Secretary finds necessary or appropriate to protect the public health, including the following:
>
> * * * * *
>
> (ii) Appropriate conditions designed to ensure that individuals to whom the product is administered are informed—

face coverings. Edtl alleges that defendants are civilly liable under § 1983 for enforcing OAR 333-019-1025 because the EUA supersedes OAR 333-019-1025 under the Supremacy Clause. Am. Comp. ¶¶ 41-46. Defendants counter that Edtl's claim should be dismissed because the EUA applies to medical providers only and because the face coverings[8] required by OAR 333-019-1025 are not medical devices within the meaning of the statute.

Even if Edtl were correct that the EUA supersedes OAR 333-019-1025, his EUA claim has three critical defects. First, as explained above, defendants are not state actors for the purpose of § 1983 liability. Edtl's EUA claim fails for that reason alone. Second, although a central tenet of Edtl's argument is that the EUA confers the freedom of choice not to wear a mask, Edtl's own allegations show that he had the choice of leaving the Best Buy store so that he would not have to wear a mask. Thus, Edtl had the freedom of choice that he asserts was due to him. Finally, to the extent that Edtl is arguing that § 1983 confers liability on a private actor when it enforces a state law that runs afoul of a federal law under the Supremacy Clause, Edtl has not provided the court with a single case or a developed argument that ties a violation of the Supremacy Clause to a cause of action under § 1983. An alleged violation of the Supremacy Clause neither confers an

---

      (I) that the Secretary has authorized the emergency use of the product;

      (II) of the significant known and potential benefits and risks of such use, and of the extent to which such benefits and risks are unknown; and

      (III) of the option to accept or refuse administration of the product, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks.

[8]    OAR 333-019-1025(5) requires wearing a "mask, face covering or face shield" indoors. "Face coverings are defined as "a cloth, polypropylene, paper or other face covering that covers the nose and the mouth and that rests snugly above the nose, below the mouth, and on the sides of the face." OAR 333-019-1025(4)(c))

independent right of action nor creates a source of a federal right. *See Johnson v. Brown*, 567 F. Supp. 3d 1230, 1255 (D. Or. 2021) (so stating and citing *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324-25 (2015) ("It is equally apparent that the Supremacy Clause is not the source of any federal rights, ... and certainly does not create a cause of action.")). The court fails to see how wrapping an asserted Supremacy Clause violation under a § 1983 action is a viable avenue for asserting a deprivation of an existing "right secured by the Constitution or laws of the United States." *Long*, 442 F.3d at 1185.

For these reasons, Edtl's EUA is not cognizable, and the court grants defendants' motion to dismiss Claim 2.

C.     ***Dismissed With Prejudice***

Claims 1 and 2 fail as a matter of law and the court dismisses both claims with prejudice as amendment would be futile. *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998) (stating that, "[a]lthough there is a general rule that parties are allowed to amend their pleadings, it does not extend to cases in which any amendment would be an exercise in futility . . . or where the amended complaint would also be subject to dismissal").

## ATTORNEY FEES REQUEST

Defendants request attorney fees under 42 U.S.C. § 1988(b), which provides that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs" in a § 1983 action. When the defendant is the prevailing party, the court may award fees "upon a finding that the plaintiff's actions was frivolous, unreasonable, or without foundation." *Fox v. Vice*, 563 U.S. 826, 834 (2011) (citing *Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n*, 434 U.S. 412, 421 (1978)). An action is considered frivolous when

the result is obvious or the plaintiff's arguments are wholly without merit. *Vernon v. City of L.A.*, 27 F.3d 1385, 1402 (9th Cir. 1994). To make this evaluation, the court must determine whether the plaintiff could reasonably have believed that he or she had an adequate basis in law and fact to pursue the claim. *Mitchell v. Office of the Los Angeles Cnty.*, 805 F.2d 844, 846-47 (9th Cir.1986), *cert. denied*, 484 U.S. 858 (1987). The Ninth Circuit has observed that, because the threat of being assessed defendant's attorneys' fees due merely to a legal miscalculation would undermine the objective of encouraging meritorious civil rights claims, fee awards to civil rights defendants are appropriate "only in exceptional circumstances." *Id*.

  The court finds that this action is not an exceptional circumstance for which awarding attorney fees is appropriate. In December 2021, more than a year and a half since the beginning of the COVID-19 pandemic, Edtl was far from alone in believing that the mask mandate was a significant infringement on personal freedoms. Although the court finds that there is considerable daylight between Edtl's belief that the mask mandate (and Best Buy's compliance with it) overreached and a cognizable legal claim, the court is reluctant to find that Edtl could not have reasonably believed that he had an adequate basis in law and fact to pursue the claims against defendants. Edtl's legal theories are developed and tethered (albeit unconvincingly) to the relevant case law. To award attorney fees in this case would run contrary to "the efforts of Congress to promote the vigorous enforcement of the civil rights laws." *Harris v. Maricopa Cnty. Superior Court*, 631 F.3d 963, 968, 971 (9th Cir. 2011). The court does not exercise its discretion to award attorney fees.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss Edtl's complaint (ECF No. 11) is GRANTED. Edtl's claims are dismissed with prejudice.

IT IS SO ORDERED.

October 13, 2021

_____
JEFFREY ARMISTEAD
United States Magistrate Judge